Case 1:09-cv-01689-AWI-GSA   Document 18   Filed 02/23/10   Page 1 of 18

V. Steven Booth
Louise Q. Booth
5717 Roundup Way
Bakersfield, CA 93306




FILED

FEB 23 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES, | Case No. 1:09-CV-01689-AWI-JLT |
|---|---|
| Plaintiff, | DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS. |
| v. | |
| V. STEVEN BOOTH, LOUISE Q. BOOTH, | |
| Defendants. | |
| | Judge: ANTHONY W. IISHI |

## NOTICE OF MOTION

TO: Guy Patrick Jennings, U.S. Department of Justice, P.O. Box 683, Ben Franklin Station, Washington, D.C. 20044-0683.

PLEASE TAKE NOTICE that on ~~March~~ April 12, 2010 at 1:30 ~~am.~~ / pm. or as soon after the time as the parties can be heard, defendants will move the court for an order dismissing the above entitled action with prejudice for lack of subject-matter jurisdiction.

This motion and supporting memorandum and documentation will be presented to judge Anthony W. Iishi in courtroom 2 located at 2500 Tulare Street, Fresno, CA 93721.

## MOTION

Pursuant to Fed. R. Civ. P. 12(h)(3) defendants move the court for an order dismissing the above-captioned action for lack of subject matter jurisdiction with prejudice because the action is not authorized, and there is no appointed assessment officer to assess tax that the court can reduce to judgment.

Respectfully submitted this 23rd day of February, 2010.

By: *V. Steven Booth*

V. STEVEN BOOTH

By: *Louise Booth*

LOUISE Q. BOOTH

V. Steven Booth
Louise Q. Booth
5717 Roundup Way
Bakersfield, CA 93306

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES, | Case No. 1:09-CV-01689-AWI-JLT |
|---|---|
| Plaintiff, | DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS. |
| v. | |
| V. STEVEN BOOTH, LOUISE Q. BOOTH, | |
| Defendants. | |
| | Judge: ANTHONY W. IISHI |

Fed. R. Civ. P. 12(h)(3) states: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

This action has not been authorized pursuant to law, at the direction of the Attorney General of the United States and with the authorization of the Chief Counsel of the Internal Revenue Service. 26 U.S.C. Section 7401 states that "No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanc-

tions the proceedings and the Attorney General or his delegate directs that the action be commenced." Section 7403 States, in pertinent part that, "In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien . . ."

Therefore, when challenged, this bare allegation that a civil tax enforcement proceeding has been commenced with proper authorization is insufficient and this court is without jurisdiction as to Plaintiff's complaint. See, *United States v. One 1972 Cadillac Coupe Deville, etc.* (1973), ED Ky) 355 F. Supp. 513; *United States v. Twenty-Two Firearms* (1979), DC Colo) 463 F. Supp 730. 20 Fed. Proc., L.Ed. section 48:1286. As a matter of law the government's complaint must either be dismissed or substantiated as properly authorized. *U.S. v. Mccallum*, 970 F.2d 66 (5th Cir. 1992)

In the absence of a challenge by a taxpayer, a court generally presumes that the United States has received the appropriate authorizations before filing suit. *United States v. Twenty-Two Firearms*, 463 F. Supp. 730, 731 (D. Colo. 1979); see *United States v. One 1941 Cadillac Sedan*, 145 F.2d 296, 299 (7th Cir. 1944). However, when the authority to bring the suit is challenged, the United States must prove that it has the proper authorization from (1) the Secretary of the Treasury or his delegate and (2) the Attorney General or his delegate or face dismissal for lack of jurisdiction. *Twenty-Two Firearms*, 463 F. Supp. at 731. *U.S. v. Wesselman* (S.D.Ill. 2006) Civil No. 05-cv-4152-JPG. April 24, 2006.

In *U.S. v. Pfannenstiel*, (N.M. 2001) No. CIV 98-117 BB/DJS February 15, 2001, the United States alleged such action was authorized under 7401 and 7403, the defendant denied the allegation. No presumption can be made regarding authorization for this type of action when such allegations are denied, and the issues are put to proof. *U.S.v. Twenty-Two Firearms*, 463 F. Supp. 730 (D.C. Colo. 1979).

## NO EVIDENCE EXIST TO REDUCE IMPLIED FEDERAL TAX ASSESSMENTS TO JUDGEMENT

Section 6322, Title 26 U.S.C. states in pertinent part "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise ***at the time the assessment is made* . . .**" (emphasis added)

Currently, section 301.6203-1, Title 26 Code of Federal Regulation provides for the method of assessment as follows:

"**Method of assessment.**

The district director and the director of the regional service center shall appoint one or more assessment officers. The district director shall also appoint assessment officers in a Service Center servicing his district. The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment

is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." [EXHIBIT 1]

According to the same Treasury regulation, either the district director or the director of the regional service center were solely and expressly authorized to appoint assessment officers, however these positions were eliminated by the IRS Reform and Restructuring Act of 1998, effective July 22, 1998. Also see attached Exhibit 2 – IRS REG-118886-06 admitting to this material essential fact.

Although plaintiff may claim there is some sort of "savings clause", Fed. Reg. Vol. 74, No. 149, Wednesday August 5, 2009, p. 39003 [REG-112756-09] the district court has already found that said claim is ineffective because the above cited Treasury regulation is required to be updated in light of the statutory mandated reorganization and the elimination of certain expressed positions within the IRS, *United States v. Living World Christian Center*, Civil No. 08-MC-37, D.C. Minn. (Jan. 30, 2009) cited in Fed. Reg. Vol. 74, No. 149, Wednesday August 5, 2009, p. 39004 – *see* attached EXHIBIT 3.

It is a fact that Plaintiff implies assessments were on October 18, 1999 long after the July 22, 1998 effective date of IRS Reform and Restructuring Act of 1998 eliminating the positions of either the district director or the director of the regional service center to appoint assessment officers to make tax assessments.

Since the positions of the district director and the direction of the regional service center were eliminated after passage of the 1998 IRS Reform and Restructuring Act, <u>no</u> assessment officers could have been appointed to make assessments to support plaintiff's complaint according to the above-referenced Treasury regulation and the law itself.

Thus, the court lacks subject matter jurisdiction and must dismiss the action where there is <u>no</u> appointed assessment officer to assess tax that the court can reduce to judgment.

## **FRAUD UPON THE COURT**

It appears that Plaintiff carefully and purposely avoids alleging in it's complaint the statutory scheme by which it made tax assessments are made because there are <u>no</u> assessment officers to make tax assessments against defendants.

"In order to meet the necessarily demanding standard of proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. * * * [O]ne species of fraud upon the court occurs when an 'officer of the court' perpetuates fraud affecting the ability of the court or jury to impartially judge a case. Pumphrey v. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir. 1995).'" *Herring v. U.S.* 424 F.3d 384 (2005).

See H.K. Porter Co. Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1119 (6th Cir. 1976) (dicta) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court."); Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1079 (2nd Cir. 1972) (an

attorney might commit fraud upon the court by instituting an action "to which he knew there was a complete defense"). *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

According to the points and authorities stated above, it appears that the United States would have this court assume or believe that it complied with any law before and after it instituted it's instant lawsuit.

As already demonstrated plaintiff's conduct was intentional, directed at the court itself, and in fact deceives the court to believe it has the power to reduce to judgment assumed or presumed tax assessments that do not exist according to the authorities and facts stated hereinabove. Without an appointed assessment officer to sign the record of assessment, there is <u>no</u> assessment to reduce to judgment.

Failure of the government to offer said proof, or the court to demand such proof to the contrary deprives this Court of jurisdiction to proceed. Thus, the action must be dismissed absent such proof by the government, forthwith.

## **CONCLUSION**

For the reasons stated hereinabove, the complaint ought to be dismissed with prejudice finding it was commenced premeditatedly and in violation of the law to deceive the court into believing, assuming, or presuming it could reduce non-existent tax assessments to judgment against defendants.

Respectfully submitted this 23rd day of February, 2010.

By: *V. Steven Booth*
V. STEVEN BOOTH

By: *Louise Booth*
LOUISE Q. BOOTH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT 1

26
27
28

DEFENDANTS' MEMORANDUM IN RE: MOTION TO DISMISS,
US v. BOOTH, CASE NO. 1:09-CV-01689-AWI-JLT

not been paid and the district director or the director of the regional service center must make assessment therefor upon the person the district director determines to be liable for the tax. However, the district director or the director of the regional service center may not assess any tax which is payable by stamp unless the taxpayer fails to pay such tax at the time and in the manner provided by law or regulations.

(ii) If a taxpayer gives a check or money order as a payment for stamps but the check or money order is not paid upon presentment, then the district director or the director of the regional service center shall assess the amount of the check or money order against the taxpayer as if it were a tax due at the time the check or money order was received by the district director.

(3) *Erroneous income tax prepayment credits.* If the amount of income tax withheld or the amount of estimated income tax paid is overstated by a taxpayer on a return or on a claim for refund, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund shall be assessed by the district director or the director of the regional service center in the same manner as in the case of a mathematical error on the return. See section 6213 (b)(1), relating to exceptions to restrictions on assessment.

(b) *Estimated income tax.* Neither the district director nor the director of the regional service center shall assess any amount of estimated income tax required to be paid under section 6153 or 6154 which is unpaid.

(c) *Compensation of child.* Any income tax assessed against a child, to the extent of the amount attributable to income included in the gross income of the child solely by reason of section 73(a) or the corresponding provision of prior law, if not paid by the child, shall, for the purposes of the income tax imposed by chapter 1 of the Code (or the corresponding provisions of prior law), be considered as having also been properly assessed against the parent. In any case in which the earnings of the child are included in the gross income of the child solely by reason of section 73(a) or the corresponding provision of prior law, the parent's liability is an amount equal to the amount by which the tax assessed against the child (and not paid by him) has been increased by reason of the inclusion of such earnings in the gross income of the child. Thus, if for the calendar year 1954 the child has income of $1,000 from investments and of $3,000 for services rendered, and the latter amount is includible in the gross income of the child under section 73(a) and the child has no wife or dependents, the tax liability determined under section 3 is $625. If the child had only the investment income of $1,000, his tax liability would be $62. If the tax of $625 is assessed against the child, the difference between $625 and $62, or $563, is the amount of such tax which is considered to have been properly assessed against the parent, if not paid by the child.

§ 301.6203-1   Method of assessment.

The district director and the director of the regional service center shall appoint one or more assessment officers. The district director shall also appoint assessment officers in a Service Center servicing his district. The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

§ 301.6204-1   Supplemental assessments.

If any assessment is incomplete or incorrect in any material respect, the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26  # EXHIBIT 2
27
28

---

DEFENDANTS' MEMORANDUM IN RE: MOTION TO DISMISS,
US v. BOOTH, CASE NO. 1:09-CV-01689-AWI-JLT

# IRS Notice of Proposed Rulemaking (REG-118886-06) Clarifying Section 6411 Regulations by Cross-Reference to Temporary Regulations (T.D. 9355)

Section 6411
Section 6402

> These rules are scheduled to be published in the *Federal Register* dated Aug. 27, 2007.

**DEPARTMENT OF THE TREASURY**

**Internal Revenue Service**

**26 CFR Part 1**

**[REG-118886-06]**

**RIN 1545-BF65**

**Clarification to Section 6411 Regulations**

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Notice of proposed rulemaking by cross-reference to temporary regulations.

**SUMMARY:** In the Rules and Regulations section of this issue of the **Federal Register**, the IRS is issuing temporary regulations relating to the computation and allowance of the tentative carryback adjustment under section 6411 of the Internal Revenue Code. Those temporary regulations clarify that for purposes of allowing the tentative adjustment, the IRS may credit or reduce the tentative adjustment by an assessed tax liability, whether or not that tax liability was assessed before the date the application for tentative carryback is filed, and other unassessed liabilities in certain other circumstances. Those regulations also remove all references to IRS district director or service center director, as these positions no longer exist within the IRS. The offices of the district director and service center director were eliminated by the IRS reorganization implemented pursuant to the IRS Reform and Restructuring Act of 1998. The text of the temporary regulations serves as the text of these proposed regulations.

**DATES:** Written and electronic comments and requests for a public hearing must be received by November 26, 2007.

**ADDRESSES:** Send submissions to: CC:PA:LPD:PR (REG-118886-06), room 5203, Internal Revenue Service, PO Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-118886-06), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW., Washington, DC, or sent electronically via the Federal eRulemaking Portal at *www.regulations.gov* (IRS REG-118886-06).

**FOR FURTHER INFORMATION CONTACT:** Concerning the proposed regulations, Cynthia A. McGreevy, (202) 622-4910; concerning submissions of comments, Richard Hurst, (202) 622-7180 (not toll-free numbers).

**SUPPLEMENTARY INFORMATION:**

# EXHIBIT 3

DEFENDANTS' MEMORANDUM IN RE: MOTION TO DISMISS,
US v. BOOTH, CASE NO. 1:09-CV-01689-AWI-JLT

regulations for which frequent and routine amendments are necessary to keep them operationally current. Therefore, this proposed regulation: (1) Is not a "significant regulatory action" under Executive Order 12866; (2) is not a "significant rule" under DOT Regulatory Policies and Procedures (44 FR 11034; February 26, 1979); and (3) does not warrant preparation of a regulatory evaluation as the anticipated impact is so minimal. Since this is a routine matter that will only affect air traffic procedures and air navigation, it is certified that this proposed rule, when promulgated, would not have a significant economic impact on a substantial number of small entities under the criteria of the Regulatory Flexibility Act.

The FAAs authority to issue rules regarding aviation safety is found in Title 49 of the U.S. Code. Snhtitle 1, Section 106, describes the authority for the FAA Administrator. Subtitle VII, Aviation Programs, describes in more detail the scope of the agency's authority. This rulemakiug is promulgated under the authority described in Subtitle VII, Part A, Subpart I, Section 40103. Under that section, the FAA is charged with prescribing regulations to assign the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace. This regnlation is within the scope of that authority as it establishes additional controlled airspace at Pueblo Memorial Airport, CO.

### List of Subjects in 14 CFR Part 71

Airspace, Incorporation by reference, Navigation (air).

### The Proposed Amendment

Accordingly, pursuant to the authority delegated to me, the Federal Aviation Administration proposes to amend 14 CFR part 71 as follows:

### PART 71—DESIGNATION OF CLASS A, B, C, D, AND E AIRSPACE AREAS; AIR TRAFFIC SERVICE ROUTES; AND REPORTING POINTS

1. The authority citation for 14 CFR part 71 continues to read as follows:

Authority: 49 U.S.C. 106(g), 40103, 40113, 40120; E.O. 10854, 24 FR 9565, 3 CFR, 1959–1963 Comp., p. 389.

### §71.1  [Amended]

2. The incorporation by reference in 14 CFR 71.1 of the FAA Order 7400.9S, Airspace Designations and Reporting Points, sigued October 3, 2008, and effective October 31, 2008 is amended as follows:

*Paragraph 6005.   Class E airspace areas extending upward from 700 feet or more above the surface of the earth.*

\*     \*     \*     \*     \*

### ANM CO E5   Pueblo, CO [Modified]

Pueblo Memorial Airport, CO
(Lat. 38°17′21″ N., long. 104°29′48″ W.)

That airspace extending upward from 700 feet above the surface within 21.8-mile radius of the Pueblo Memorial Airport, and within the 28.8-mile radius of Pueblo Memorial Airport clockwise between the 070° and 133° bearing from the airport; that airspace extending upward from 1,200 feet above the surface bounded on the north by lat. 38°30′00″ N., on the east by V–169, on the south by V–210, on the west by a line from lat. 37°38′00″ N., long. 105°00′02″ W.; to lat. 38°09′25″ N., long. 105°08′06″ W.; to lat. 38°05′51″ N., long. 105°30′49″ W.; to lat. 38°10′00″ N., long. 105°33′02″ W.; to lat. 38°30′00″ N., long. 105°33′02″ W.; that airspace extending upward from 13,700 feet MSL bounded by a line beginning at lat. 38°09′25″ N., long. 105°08′06″ W.; to lat. 37°38′00″ N., long. 105°00′02″ W.; to lat. 37°34′00″ N., long. 105°12′02″ W.; to lat. 38°05′51″ N., long. 105°30′49″ W.; thence to point of beginning, excluding that airspace within Federal airways and the Colorado Springs, CO, Class E airspace area.

\*     \*     \*     \*     \*

Issued in Seattle, Washington, on Jnly 27, 2009.

**H. Steve Karnes,**

*Acting Manager, Operations Support Group, Western Service Center.*

[FR Doc. E9–18736 Filed 8–4–09; 8:45 am]

**BILLING CODE 4910-13-P**

---

## DEPARTMENT OF THE TREASURY

### Internal Revenue Service

### 26 CFR Part 301

[REG–112756–09]

RIN 1545–BI60

### Amendments to the Regulations Regarding Questions and Answers Relating to Church Tax Inquiries and Examinations

**AGENCY:** Internal Revenue Service ("IRS"), Treasury.

**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** This document contains proposed regulations amending the questions and answers relating to church tax inquiries and examinations. These proposed regulations replace references to positions that were abolished by the Internal Revenue Service Restructuring and Reform Act of 1998 with references that are consistent both with the statute and the IRS's current organizational structure.

**DATES:** Written or electronic comments and requests for a public hearing must be received by November 3, 2009.

**ADDRESSES:** Send submissions to: CC:PA:LPD:PR (REG–112756–09), Room 5205, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG–112756–09), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW., Washington, DC, or sent electronically, via the Federal eRulemaking Portal at *http://www.regulations.gov* (IRS–REG–112756–09).

**FOR FURTHER INFORMATION CONTACT:** Concerning these proposed regulations, Benjamin Akins at (202) 622–1124 or Monice Rosenbaum at (202) 622–6070; concerning submission of comments and requests for a public hearing, Richard Hnrst, *Richard.A.Hurst@irscounsel.treas.gov*, (202) 622–7180 (not a toll-free numbers).

**SUPPLEMENTARY INFORMATION:**

### Background

*Restrictions on Church Tax Inquiries and Examinotions*

This document contains amendments to the regulations on Procednre and Administratiou (26 CFR part 301) under section 7611 of the Internal Revenue Code. Section 7611 was enacted by section 1033 of the Deficit Reduction Act of 1984 (Pub. L. 98–369, 98 Stat. 1034–1039) ("DRA 1984").

Prior to the enactment of section 7611, sectiou 7605(c) imposed special requirements that the IRS had to meet before it could examine chnrch books of account, but there were no special requirements imposed before the IRS could commence an investigation or inquiry into a church's tax liabilities. As explained in the Conference Report accompanying DRA 1984, H.R. Rep. No. 98–861, 98th Coug., 2d Sess. 1101 (1984), 1984–3 CB Vol. 2 355, Congress songht to address certain problems that arise when the IRS examines the records of a church. Thus, Congress expanded the requirements relating to IRS interactions with churches. Although prior law imposed limitations on the examination of church records, those limitations were somewhat vague and relied on internal IRS procedures to protect the rights of a church in the examination process. Additionally, there was some uncertainty regarding the scope of the investigations to which prior law applied and the nature of the

records protected by the law. The enactment of section 7611 attempted to resolve these competing considerations by providing detailed rules for the IRS to follow in making tax inquiries to churches, both as to tax-exempt status and as to the existence of unrelated business income.

Section 7611(a)(2) permits the IRS to begin an inquiry into whether a church qualifies for exemption from income tax as an organization described in section 501(c)(3) or whether a church has a liability for unrelated business income tax only if an appropriate high-level Treasury official first reasonably believes on the basis of facts and circumstances, recorded in writing, that the church may not be exempt under section 501(a), or that the church may be carrying on an unrelated trade or business, or may be otherwise engaged in activities subject to tax. Section 7611(h)(7) provides that the term "appropriate high-level Treasury official" means the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region. The legislative history of section 7611 interprets the term "appropriate high-level Treasury official" to mean an IRS Regional Commissioner (or higher official). H.R. Rep. No. 98–861, 98th Cong. 2d Sess. 1101 (1984), 1984–3 CB Vol. 2 355. Final regulations under section 7611, which were published on February 21, 1986, 50 FR 6219, also interpret the term to mean an IRS Regional Commissioner. See Treas. Reg. § 301.7611 Q1–A1.

Section 7611(b)(2)(A) provides that at least 15 days before the beginning of a church tax examination, the IRS must provide notice of the examination to both the church and the appropriate regional counsel. Section 7611(b)(3)(C) provides that any regional counsel who receives notice under section 7611(b)(2)(A) may submit to a regional commissioner an advisory objection to the examination within 15 days after the notice of examination is provided.

Section 7611(c)(1)(A) provides that the IRS must make a final determination as to any church tax inquiry or examination within two years of the date the notice of examination is provided to the church under section 7611(b). In instances where no examination follows a church tax inquiry, section 7611(c)(1)(B) requires the IRS to make a final determination as to the inquiry no later than 90 days after the date the notice of inquiry is provided to the church under section 7611(a). Section 7611(c)(2) suspends the periods described in section 7611(c)(1) (that is, 2 year period and 90 day period) while certain judicial proceedings are pending or being appealed, including proceedings brought by the IRS against a church seeking to compel compliance with a reasonable request to examine church records or religious activities.

Section 7611(d)(1) prohibits the IRS from making certain final determinations (that is, revocation of tax-exempt status, notice of deficiency, or assessment) regarding a church until after the appropriate regional counsel determines in writing that there has been substantial compliance with the requirements of section 7611. Section 7611(d)(1) further requires the appropriate regional counsel's written approval of such final determination before the IRS can make the determination.

Section 7611(e)(1) provides that if the IRS has not substantially complied with the requirements of section 7611, any proceeding to compel compliance with a summons shall be stayed until the court finds that the IRS has taken all practicable steps to correct the uncompliance. Section 7611(e)(2) states that the remedy provided in subsection (e)(1) shall be the exclusive remedy for a church in regard to any noncompliance by the IRS with the requirements of section 7611.

Under section 7611(f), the IRS may not commence an inquiry or examination of a church if, within the previous five years, the IRS completed an inquiry or examination regarding the church that did not result in a revocation, notice of deficiency, assessment, or a request for a significant change in the church's operating practices. An exception exists where the Secretary or his delegate approves the second inquiry or examination in writing. There is also an exception where the issues involved in the subsequent inquiry or examination are not the same or similar to issues involved in the preceding inquiry or examination. Prior to the Internal Revenue Service Restructuring and Reform Act of 1998, Public Law 105–206 ("RRA 1998"), discussed below, section 7611(f) required the Assistant Commissioner (Employee Plans and Exempt Organizations), instead of the Secretary or his delegate, to approve subsequent inquiries and examinations for the exception to apply.

### Reorganization of the IRS

Section 1001 of RRA 1998 requires the Commissioner of Internal Revenue to develop and implement a plan to reorganize the IRS. The congressional mandate provides that the plan shall "eliminate or substantially modify the existing organization of the IRS which is based on a national, regional, and district structure; [and] establish organizational units serving particular groups of taxpayers with similar needs * * *." Under the reorganized IRS, four nationwide operating divisions were established to serve different types of taxpayers. One of these operating divisions serves tax exempt and government entities, including churches.

Section 1102(e)(3) of RRA 1998 amended section 7611(f)(1), relating to second inquiries and examinations within five years of a previous inquiry or examination, by replacing Assistant Commissioner (Employee Plans and Exempt Organizations) with Secretary. Under section 7701(a)(11)(B), Secretary is defined to refer to the Secretary of the Treasury or his delegate. RRA 1998 did not amend other portions of section 7611, such as references to "appropriate high-level Treasury official" and "appropriate regional counsel."

In mandating the restructuring of the IRS under RRA 1998, Congress realized that certain positions within the IRS would be eliminated as a result of transitioning from a geographic structure to a structure based on nationwide jurisdiction of similar types of taxpayers. Accordingly, Congress included a savings provision in RRA 1998. Section 1001(b) provides, "All orders, determinations, rules, regulations * * * and other administrative actions * * * which are in effect at the time this section takes effect * * * shall continue in effect according to their terms until modified, terminated, superseded, set aside or revoked in accordance with law by * * * the Secretary of the Treasury [or] the Commissioner of Internal Revenue * * *." This provision keeps in effect regulations that make reference to officers whose positions no longer exist. The legislative history of RRA 1998 at H.R. Conf. Rep. No. 105–599, 105th Cong., 2d Sess. 195 (1998) explains that "[t]he legality of IRS actions will not be affected pending further appropriate statutory changes relating to such a reorganization (e.g., eliminating statutory references to obsolete positions)." Accordingly, the Treasury Regulations under section 7611 have remained in effect notwithstanding their references to the positions of Regional Commissioner, Regional Counsel, and Assistant Commissioner (Employee Plans and Exempt Organizations), positions that were eliminated by the reorganization. Delegation Order 193 (Rev. 6) (11/08/2000) provides in part that actions previously delegated to

Regional Commissioners by Treasury Regulations (par. 7) are now delegated to "Assistant Deputy Commissioners; Division Commissioners; Chiefs; and Directors, Submission Processing Field, Compliance Services Field, and Accounts Management Field." In the Internal Revenue Manual ("IRM"), the IRS designated the Director, Exempt Organizations Examinations as the appropriate high-level Treasury official for purposes of section 7611. See IRM § 4.76.7.

Recent litigation has challenged the IRS's interpretation of the term "appropriate high-level Treasury official" following the reorganization. See *United States* v. *Living Word Christian Center*, Civil No. 08–mc–37, D.C. Minn. (Jan. 30, 2009) ("*LWCC*"). In particular, concern has been expressed about the need for an update to the regulations in light of the statutorily mandated reorganization and the elimination of internal revenue regions.

In *LWCC*, the District Court for the District of Minnesota ruled that the Director, Exempt Organizations Examinations is not an appropriate high-level Treasury official to make the "reasonable belief" determination required before the IRS may commence a church tax inquiry under section 7611. *LWCC* at 2. The district court concluded that the Director, Exempt Organizations Examinations is not an appropriate high-level Treasury official within the meaning of section 7611(h) because that official does not have a comparable breadth of responsibility to a regional commissioner nor as high a position within the IRS. Although the IRS disagrees with the district court's reasoning and conclusion in *LWCC*, the IRS acknowledges that it would be beneficial to revise the regulations in light of the changes in IRS organization made in the wake of RRA 1998 to clarify who is an appropriate high-level Treasury official for purposes of section 7611. Further, the IRS recognizes the significance of the special procedural requirements for church tax inquiries and examinations. These proposed regulations assign responsibility for making the determinations required under section 7611(a) to the Director, Exempt Organizations.

**Explanation of Provisions**

These proposed regulations eliminate references to the positions of Regional Commissioner and Regional Counsel under the existing regulations and give responsibilities formerly assigned to these now defunct positions to the Director, Exempt Organizations and the Division Counsel/Associate Chief Counsel, Tax Exempt and Government Entities, respectively. In addition, these proposed regulations eliminate references to the position of Assistant Commissioner (Employee Plans and Exempt Organizations) under the existing regulations and give responsibilities formerly assigned to that position to the Commissioner, Tax Exempt and Government Entities or the Deputy Commissioner, Tax Exempt and Government Entities.

*Reasonable Belief and Inquiry Notice Requirement*

With respect to the initiation of the church tax inquiry process, Treas. Reg. § 301.7611–1 Q1–A1 provides that a "Regional Commissioner (or higher Treasury official)" is the appropriate high-level Treasury official for purposes of this reasonable belief requirement. Similarly, Treas. Reg. § 301.7611–1 Q7–A7 states, "Repeated (two or more) failures by a church or its agents to reply to routine requests * * * will be considered by the appropriate Internal Revenue Service Regional Commissioner to be a reasonable basis for commencement of a church tax inquiry under the church tax inquiry and examination procedures of section 7611." In addition, Treas. Reg. § 301.7611 Q9–A9 requires a Regional Commissioner to provide written notice to the church of the beginning of an inquiry.

These proposed regulations eliminate references to the Regional Commissioner and instead provide that the Director, Exempt Organizations is the "appropriate high-level Treasury official" for purposes of the reasonable belief and inquiry notice requirements of Treas. Reg. § 301.7611–1 Q1–A1, Q7–A7, and Q9–A9. The Director, Exempt Organizations is a senior executive who reports to the Commissioner/Deputy Commissioner, Tax Exempt and Government Entities Division, and who is responsible for planning, managing, directing and executing nationwide activities for Exempt Organizations. See IRM § 1.1.23.5 for a comprehensive description of these activities.

*Examination Notice Requirement*

Under section 7611(h)(2) and Treas. Reg. § 301.7611–1 Q10–A10, a church tax examination cannot be commenced without first providing written notice of such examination to the church and to the "appropriate Regional Counsel" at least 15 days before the IRS begins the church tax examination. The regulation allows the Regional Counsel to file an advisory objection to the examination within this same 15-day period.

These proposed regulations amend Treas. Reg. § 301.7611–1 Q10–A10 by substituting Division Counsel/Associate Chief Counsel, Tax Exempt and Government Entities, for each occurrence of Regional Counsel. These proposed regulations further specify that before the notice of examination is provided to the church, a copy of the notice must be provided to the Division Counsel/Associate Chief Counsel, Tax Exempt and Government Entities.

*Revocation of Exemption or of Church Status*

Section 7611(d)(1) and Treas. Reg. § 301.7611–1 Q11–A11 require the Regional Counsel to approve, in writing, certain final determinations that are within the scope of section 7611 and adversely affect the tax-exempt status or increase any tax liability of a church. Further, prior to such adverse action, section 7611(d) requires Regional Counsel to determine, in writing, that there has been substantial compliance with the requirements of section 7611, when applicable.

These proposed regulations amend Treas. Reg. § 301.7611–1 Q11–A11 by providing that the Division Counsel/Associate Chief Counsel, Tax Exempt and Government Entities, is the official responsible for complying with the written determination and approval requirements of section 7611(d)(1).

*Limitations on Period of Assessment*

Section 7611(d)(2) and Treas. Reg. § 301.7611–1 Q15–A15 provide special limitation periods for church tax liabilities. These special rules are not to be construed to otherwise increase an otherwise applicable limitation period. Treas. Reg. § 301.7611–1 Q15–A15 states that, for purposes of section 7611(d)(2)(A), that is, the statute of limitations applicable to liabilities arising from church tax examinations, a church is determined not to be a church exempt from tax when the appropriate Regional Commissioner approves, in writing, the completed findings of the examining agent that the organization is not a church exempt from tax for one or more of the three most recently completed taxable years ending before the examination notice date. The regulation also states that the Regional Commissioner cannot delegate this approval to a subordinate official. Further, the completed findings of the examining agent, which are approved by the appropriate Regional Commissioner, are not considered a final revenue agent's report (defined in section 7611(g)).

These proposed regulations substitute the Director, Exempt Organizations for the appropriate Regional Commissioner

V. Steven Booth
Louise Q. Booth
5717 Roundup Way
Bakersfield, CA 93306

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES, | Case No. 1:09-CV-01689-AWI-JLT |
|---|---|
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| V. STEVEN BOOTH, LOUISE Q. BOOTH, | |
| Defendants. | |

**This is to certify that on** Feb. 23rd _____, 2010 I served a true and correct copy of Defendants' Notice of Motion and Motion to Dismiss, and Defendants' Memorandum in Support of Motion to Dismiss with supporting documentation by depositing same in the United States mail in a postage pre-paid wrapper or envelope addressed to Guy Patrick Jennings, U.S. Department of Justice, P.O. Box 683, Ben Franklin Station, Washington, D.C. 20044-0683.

| | |
|---|---|
| 1 | I declare or affirm under penalty of perjury that the foregoing is true and |
| 2 | correct. |
| 3 | Executed this 23rd day of FEB., 2010. |

By: /s/ V. Steven Booth

V. Steven Booth
(*print name*)